# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEITH A. ROSENBERG,                    :        CIVIL ACTION
         **Plaintiff,**                       :

    **vs.**                                 :

                                     :

STEPHEN HOMOKI, et al.,                 :                  FILED APR - 9 2009
         **Defendant.**                      :        NO. 06-3719

## MEMORANDUM AND ORDER

GENE E.K. PRATTER, J.

                                          APRIL 9, 2009

      Excessive force cases often depend on issues of sequence and timing that can only be resolved by a jury. When an alleged blow was struck; whether a blow was justified at the moment it was struck; who knew what, when – the answers to these questions can determine whether a given amount of force was "reasonable" at the moment it was used. This case is no exception.

      Keith Rosenberg brings claims against Officer Stephen Homoki, Jr., Officer Christopher Miller, Sergeant Michael Vangelo, and Sergeant Michael Weston (collectively, "Defendant Officers") in their official and individual capacities for using allegedly excessive force during and after Mr. Rosenberg's arrest. Mr. Rosenberg claims that the officers' use of force violated his civil rights guaranteed by the Fourth and Fourteenth Amendments.[1] Mr. Rosenberg also

---

[1] Mr. Rosenberg's Second Amended Complaint includes claims under the Fourth and Fourteenth Amendments, but does not fully explain the theories behind these claims. The Fourth Amendment is, of course, made applicable to the states by the Fourteenth Amendment. See, e.g., Albright v. Oliver, 510 U.S. 266, 272-73 (1994) (citing Mapp v. Ohio, 367 U.S. 643 (1961)).

    At oral argument, Mr. Rosenberg's counsel confirmed that he is not pursuing substantive due process claims and equal protection claims under the Fourteenth Amendment. See Oral Argument Tr. at 33.

ENTERED

APR - 9 2009

CLERK OF COURT

claims that the officers, separately and acting in concert, conspired to conceal or cover up their use of excessive force, in violation of 42 U.S.C. §§ 1983 and 1985. Mr. Rosenberg also brings a Monell claim against Defendant City of Easton under 42 U.S.C. § 1983. Finally, Mr. Rosenberg brings state law claims against the officers for assault, battery, and intentional infliction of emotional distress.

Officer Homoki, Officer Miller, Sergeant Vangelo, and the City of Easton ("Easton Defendants") have filed a Motion for Summary Judgment, addressing all claims against them. Defendant Sergeant Weston filed a separate Motion for Summary Judgment as to the claims against him. Mr. Rosenberg opposes both Motions.

For the reasons that follow, the Court must deny summary judgment as to Mr. Rosenberg's claims of excessive force under 42 U.S.C. § 1983, assault, and battery against Officer Homoki, including the claim for punitive damages, and find at this juncture that Officer Homoki is not entitled to qualified immunity. The Court also must deny summary judgment as to Mr. Rosenberg's Monell claim against the City of Easton under 42 U.S.C. § 1983. The Court must grant summary judgment as to Mr. Rosenberg's claims of conspiracy under 42 U.S.C. §§ 1983 and 1985, as well as his claims of intentional infliction of emotional distress, against all of the defendant officers. The Court also must grant summary judgment as to Mr. Rosenberg's claims of excessive force under 42 U.S.C. § 1983, assault, and battery against Sergeant Weston, Sargeant Vangelo and Officer Miller.

I.      STANDARD OF REVIEW

Evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all

reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 83 (3d Cir. 1987). The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record. <u>Celotex</u>, 477 U.S. at 322-23. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." <u>Walden v. Saint Gobain Corp.</u>, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d Cir. 1976)).

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Overview of Events

On September 18, 2004, Mr. Rosenberg parked the car he was driving along Prospect Street in Easton, Pennsylvania. Deposition of Keith Rosenberg ("Rosenberg Dep.")[2] at 88, 90-92. Officer Homoki, who was nearby, recognized the driver as Mr. Rosenberg, based on Mr. Rosenberg's prior arrests by the Easton Police Department. Easton Defs.' Statement of Material Undisputed Facts at ¶ 4 (not disputed); Deposition of Officer Stephen Homoki ("Homoki Dep.") at 27; Incident Report of Officer Stephen Homoki ("Homoki Rept.") at 3. Officer Homoki knew that Mr. Rosenberg had a suspended driver's license. Easton Defs.' Statement of Material

---

[2] The various parties have attached reports, deposition transcripts and portions thereof, and other documents as exhibits to their summary judgment papers. Some of these attached documents are overlapping; others are not. For ease of reference, the Court will refer to the attached documents using their actual names, rather than the exhibit numbers or letters provided by the parties.

Undisputed Facts at ¶ 5 (not disputed); Homoki Dep. at 18-19.[3]

As Mr. Rosenberg began to walk away from the car, Officer Homoki ordered Mr. Rosenberg to return to the back of the car and place his hands on the trunk. Easton Defs.' Statement of Material Undisputed Facts at ¶ 6 (this portion not disputed); Rosenberg Dep. at 91, 97-98; Homoki Dep. at 19-21; Homoki Rept. at 3. Mr. Rosenberg asserts that he complied with Officer Homoki's instructions, returned to the car and placed his hands on the trunk. Rosenberg Dep. at 98; Homoki Dep. at 20. According to Mr. Rosenberg, after he placed his hands on the trunk, Officer Homoki struck him in the back without provocation. Plf.'s Resp. to Easton Defs.' Statement of Material Undisputed Facts at ¶ 15; Rosenberg Dep. at 98- 99, 200. According to Mr. Rosenberg, given his previous exposure to excessive force at the hands of Easton Police officers, and believing that Officer Homoki might be retaliating against him for his prior lawsuit,[4] Mr. Rosenberg ran in fear for his safety. Rosenberg Dep. at 98-100; Declaration of Keith Rosenberg ("Rosenberg Decl.") at ¶ 3.

During the foot pursuit that ensued, Officer Homoki caught Mr. Rosenberg and attempted to place him under arrest; however, Mr. Rosenberg resisted, and pulled away from Officer Homoki, and continued to flee. Easton Defs.' Statement of Material Undisputed Facts at ¶ 9 (not

---

[3] Mr. Rosenberg asserts that he parked his car legally on the street, without passing the police barricade that closed off portions of the road due to flooding. Rosenberg Dep. at 96, 199. This fact is disputed by the Easton Defendants, who claim that Mr. Rosenberg was observed by Officer Homoki driving a vehicle on a street that was barricaded and closed. Easton Defs.' Statement of Material Undisputed Facts at ¶¶ 9-10, 12, 14; Homoki Rept. at 3.

[4] Mr. Rosenberg filed a prior lawsuit against Easton police officers, claiming that they had used excessive force against him, which ended in settlement. See Settlement and Release. Sergeant Vangelo testified that he discussed this settlement with several officers, particularly Officer Homoki. Deposition of Sergeant Michael Vangelo ("Vangelo Dep.") at 133-36. Sergeant Vangelo told Officer Homoki that he was upset about the settlement. Id. See also id. at 88-89, 128-29.

disputed); Rosenberg Dep. at 120-24; Homoki Dep. at 30-32.  Officer Homoki chased Mr.

Rosenberg, eventually catching up to him and tackling him to the ground.  Easton Defs.'

Statement of Material Undisputed Facts at ¶ 10 (not disputed); Rosenberg Dep. at 120-24;

Homoki Dep. at 31-32, 35-39.

Once Officer Homoki tackled Mr. Rosenberg, Mr. Rosenberg was on his hands and

knees.  Rosenberg Dep. at 132-34.  While Mr. Rosenberg remained on his hands and knees,

Officer Homoki maintained his position on top of Mr. Rosenberg, using his body weight to keep

him pinned on the ground.  Rosenberg Dep. at 132-33.  At this point, crediting Mr. Rosenberg's

story, Mr. Rosenberg was tensed on "all fours" and unable to "flail"; accordingly, he did not

punch or kick Officer Homoki.  Plf.'s Resp. to Easton Defs.' Statement of Material Undisputed

Facts at ¶ 11; Rosenberg Dep. at 132-134, 201.  As Mr. Rosenberg remained on his hands and

knees, Officer Homoki grabbed his collapsible baton and repeatedly hit Mr. Rosenberg with the

baton in the back, keeping the baton in the collapsed mode.  Rosenberg Dep. at 134, Homoki

Dep. at 47-50; Plf.'s Resp. to Easton Defs.' Statement of Material Undisputed Facts at ¶ 15.  Mr.

Rosenberg asserts that after he was struck with the baton, he fell flat to the ground and he was

then handcuffed.  Plf.'s Resp. to Easton Defs.' Statement of Material Undisputed Facts at ¶ 14;

Rosenberg Dep. at 134.  After this point, Mr. Rosenberg did not struggle or resist Officer

Homoki.  Plf.'s Resp. to Easton Defs.' Statement of Material Undisputed Facts at ¶ 14.[5]

---

[5] The Easton Defendants agree that Mr. Rosenberg initially obeyed Officer Homoki's command
to return to the back of his vehicle.  Easton Defs.' Statement of Material Undisputed Facts at ¶ 7
(not disputed); Homoki Dep. at 20.  The Easton Defendants dispute Mr. Rosenberg's version of
what happened next.  The Easton Defendants assert that, after Mr. Rosenberg returned to his
vehicle but before Officer Homoki used force against him, Mr. Rosenberg fled and "led Officer
Homoki on a foot chase. . . . During the foot pursuit, Officer Homoki caught Mr. Rosenberg and
attempted to place him under arrest; however, Mr. Rosenberg resisted physically again and . . .
continued to flee." Easton Defs.' Statement of Material Undisputed Facts at ¶¶ 8-9; Rosenberg
Dep. at 120-24; Homoki Dep. at 23, 30-32; Homoki Rept. at 4.  The Easton Defendants also

During the time when Mr. Rosenberg was on the ground, Officer Miller arrived on the scene. Homoki Dep. at 54. Officer Miller assisted Officer Homoki in handcuffing Mr. Rosenberg behind his back. Deposition of Officer Christopher Miller ("Miller Dep.") at 29; Homoki Dep. at 54-56.[6] After Mr. Rosenberg was handcuffed, Sergeant Vangelo and Sargeant Weston arrived. Def. Weston's Statement of Undisputed Facts at ¶ 10 (not disputed); Deposition of Michael Vangelo ("Vangelo Dep.") at 147-52; Deposition of Sergeant Michael Weston ("Weston Dep.") at 76, 79; Rosenberg Dep., at 134-35. Sargeant Vangelo testified that his arrival was prompted by a radio call made by Officer Homoki at the beginning of the arrest activities, in which Officer Homoki stated, "I've got Rosenberg." Vangelo Dep at 147.

Mr. Rosenberg complained to the officers that he was in pain, but the officers did not ask him whether he needed medical attention. Rosenberg Dep. at 202-03. Once arrested, Mr. Rosenberg was transported to Easton Police Station and charged with various offenses, including misdemeanors and felonies. Easton Defs.' Statement of Material Undisputed Facts at ¶ 16 (not

---

assert that Mr. Rosenberg "grabbed at the officer's tool belt which contained multiple weapons." Easton Mot. Summ. J. at 8. According to the Easton Defendants, Officer Homoki caught Mr. Rosenberg again and a struggle ensued, with Mr. Rosenberg resisting being placed under arrest, "flailing and throwing punches and hitting Officer Homoki." Easton Defs.' Statement of Material Undisputed Facts at ¶¶ 10-11; Rosenberg Dep. at 131-32; Homoki Dep. at 34-41; Homoki Rept. at 4. The Easton Defendants contend that it was only *after* Mr. Rosenberg attempted to flee, and *after* the resulting struggle, and *after* Officer Homoki attempted to use pepper spray on Mr. Rosenberg (which Mr. Rosenberg knocked away), and *after* Officer Miller arrived, that Officer Homoki struck Mr. Rosenberg with his baton. Easton Defs.' Statement of Material Undisputed Facts at ¶¶ 7-14; Rosenberg Dep. at 134; Homoki Dep. at 26, 41-42, 45-53, 55-56; Homoki Rept. at 4; Incident Report of Officer Christopher Miller ("Miller Rept.").

[6] Defendant Officer Miller's only involvement in this incident was assisting Officer Homoki in handcuffing Mr. Rosenberg behind his back. Mr. Rosenberg does not contend that Officer Miller struck him, or used any force other than to assist Officer Homoki with the handcuffing. Easton Defs.' Statement of Material Undisputed Facts at ¶ 27 (not disputed); Deposition of Officer Christopher Miller ("Miller Dep.") at 24-29.

disputed); see Homoki Rept.

After arriving at the Easton Police Station, Mr. Rosenberg was handcuffed by one arm to a wall-mounted restraining bar as the officers prepared their reports. Easton Defs.' Statement of Material Undisputed Facts at ¶ 17 (not disputed); Rosenberg Dep. at 162; Photograph of Rosenberg taken at Easton Police Department (bates-labeled KAR 0204). According to Mr. Rosenberg, this resulted in extreme pain due to the broken ribs Mr. Rosenberg suffered from Officer Homoki's strikes with the baton. Rosenberg Decl. at ¶¶ 4, 8-9.

Sergeant Weston was the supervisor in charge of the police shift on the night of Mr. Rosenberg's arrest, and testified that he was involved in booking Mr. Rosenberg at the station. Plf.'s Resp. to Def. Weston's Statement of Material Undisputed Facts at ¶ 3; Weston Dep. at 74, 86-87.[7] Specifically, Sergeant Weston directed that photographs be taken of Mr. Rosenberg's injuries. Def. Weston's Statement of Undisputed Facts at ¶ 5, 11 (not disputed); Easton Defs.' Statement of Material Undisputed Facts at ¶ 18 (not disputed); Rosenberg Dep. at 159; Weston Dep. at 89; Rosenberg Photographs.[8] Sergeant Weston also decided to seek medical attention for

---

[7] Sergeant Weston arrived at the scene of Mr. Rosenberg's arrest after Mr. Rosenberg was under arrest and in the rear of the police cruiser, en route to the police station. Def. Weston's Statement of Material Undisputed Facts at ¶ 10 (not disputed); Weston Dep. at 79. Accordingly, Sergeant Weston did not interact with Mr. Rosenberg until after Mr. Rosenberg was transported to the Easton Police Station. Easton Defs.' Statement of Material Undisputed Facts at ¶ 28 (not disputed); Weston Dep. at 76-86.

[8] The holding area where Mr. Rosenberg was processed was monitored by video cameras and a video of the entire time Mr. Rosenberg was in custody at the Easton Police Station was retained, preserved and produced to Mr. Rosenberg, both in the underlying criminal case and again in the present civil litigation. Easton Defs.' Statement of Material Undisputed Facts at ¶ 19 (not disputed). The Easton Defendants assert that "this videotape is available should the Court request a copy. However, it is not attached hereto as the alleged 'excessive' force occurred on the street and the approximately three (3) hour tape is of no direct application to the issues in the present summary judgment motion." Defs.' Statement of Material Undisputed Facts at ¶ 19, n. 2. Mr. Rosenberg does not dispute these assertions.

Mr. Rosenberg. Def. Weston's Statement of Undisputed Facts at ¶ 12 (not disputed); Weston

Dep. at 93, 102. He made this decision because of Mr. Rosenberg's complaints of pain and

injury, his visible injuries, and also to obtain a blood test for narcotics, which was related to Mr.

Rosenberg's Driving Under the Influence charge. Def. Weston's Statement of Undisputed Facts

at ¶ 13 (not disputed); Weston Dep. at 89-93, 99, 102-03[9]; Plf.'s Resp. to Def. Weston's

Statement of Material Undisputed Facts at ¶ 3; Rosenberg Decl. at ¶ 8. Mr. Rosenberg later pled

guilty to this DUI charge, admitting that he had smoked marijuana. Def. Weston's Statement of

Undisputed Facts at ¶ 13 (not disputed); Rosenberg Dep. at 87.

Less than 1 ½ hours after he was arrested, Mr. Rosenberg was transported to Easton

Hospital[10] to have his injuries examined. Easton Defs.' Statement of Material Undisputed Facts

at ¶ 20 (not disputed); Easton Hospital Report. As illustrated by the police photographs, Mr.

Rosenberg suffered three circular-patterned injuries on his back. Rosenberg Photographs. After

examination, Mr. Rosenberg also was diagnosed with one or more broken ribs, receiving

---

[9] Sergeant Weston asserts that Rosenberg did not actually request medical attention on the day of the incident. Def. Weston's Statement of Material Undisputed Facts at ¶ 7; Rosenberg Dep. At 205-06. Mr. Rosenberg purports to dispute this by stating that it was "obvious" to Sergeant Weston that Mr. Rosenberg had an "apparent injury" and needed medical attention, and pointing to Mr. Rosenberg's repeated complaints of pain to officers at the police station. Plf.'s Resp. To Def. Weston's Statement of Material Undisputed Facts at ¶ 7; Weston Dep. at 90, 92-93, 99; Rosenberg Decl. at ¶ 8. He also points to Sergeant Weston's deposition testimony that "[Mr. Rosenberg's] complaint and the visible marks dictated to me that I would like to get him medical attention." Plf.'s Resp. To Def. Weston's Statement of Material Undisputed Facts at ¶ 7; Weston Dep. at 92-93.

[10] Sergeant Weston originally called for an emergency squad, prior to having officers transport Mr. Rosenberg to the hospital. Def. Weston's Statement of Undisputed Facts at ¶ 15 (not disputed); Weston Dep. at 137. However, severe flooding conditions in Easton prevented the emergency squad from being able to get to the police station. Def. Weston's Statement of Undisputed Facts at ¶ 16 (not disputed); Weston Dep. at 137. Accordingly, Sergeant Weston had the officers transport Mr. Rosenberg to the hospital. Def. Weston's Statement of Undisputed Facts at ¶ 17 (not disputed).

8

discharge instructions from the Emergency Care Unit of the Easton Hospital indicating that "[x]-rays show that [Mr. Rosenberg has] fractured or broken one or more ribs" and that he was treated with prescription pain medication. Plf.'s Resp. to Defs.' Statement of Material Undisputed Facts at ¶ 21; Rosenberg Decl. at ¶ 9; Rosenberg Dep. at 159-61; Easton Hospital Medical Records at ROS2/Deft 5145; see Oral Argument Tr. at 25, 36.[11] Mr. Rosenberg's discharge information and prescription were given to the police. Easton Hospital Medical Records at ROS2/DEFT 5146, 5150. Nothing in Mr. Rosenberg's medical release paperwork from Easton Hospital indicated that he should not be handcuffed. Def. Weston's Statement of Undisputed Facts at ¶ 14 (not disputed); Weston Dep. at 116-17.

Mr. Rosenberg was subsequently returned to the Easton Police station, where he was again handcuffed to the wall-mounted bar. Rosenberg Decl. at ¶ 9. After Rosenberg returned from the hospital, Sergeant Weston was informed that Mr. Rosenberg was diagnosed with broken ribs. Plf.'s Resp. to Def. Weston's Statement of Material Undisputed Facts at ¶ 3; Weston Dep. at 105.

Eventually, Mr. Rosenberg was transported to Northampton County Prison, due to an active and outstanding warrant. Easton Defs.' Statement of Material Undisputed Facts at ¶ 22; Plf.'s Resp. to Defs.' Statement of Material Undisputed Facts at ¶ 22. While incarcerated there,

---

[11] The Easton Defendants dispute that Mr. Rosenberg suffered broken ribs as a result of this incident. According to the medical records cited by the Easton Defendants, Mr. Rosenberg's chest x-rays revealed "no active disease," and x-rays taken of his ribs revealed "no evidence of displaced rib fracture." Easton Defs.' Statement of Material Undisputed Facts at ¶ 22; Easton Hospital Medical Records at ROS2/DEFT 5152-5153. The Easton Defendants argue that Mr. Rosenberg "has not produced any other x-rays, tests, medical records or reports to support his claim of broken ribs, or some permanent, serious or lasting injury," and that "the evidence of record" indicates that Mr. Rosenberg did not break any ribs. Easton Defs.'s Reply at 7; see Oral Argument Tr. at 22, 25.

Mr. Rosenberg received pain medication. Easton Defs.' Statement of Material Undisputed Facts at ¶ 23; Plf.'s Resp. to Easton Defs.' Statement of Material Undisputed Facts at ¶ 23; Rosenberg Dep. at 162-63. Mr. Rosenberg also spent a month in the medical housing infirmary as a result of his injuries. Rosenberg Dep. at 163.

Mr. Rosenberg later pled guilty to (1) resisting arrest, (2) driving under a suspended license, and (3) driving under the influence of a controlled substance. In his guilty plea colloquy, Mr. Rosenberg conceded that Officer Homoki was required to use, and justified in using, "substantial force" in order to overcome his resistance. Easton Defs.' Statement of Material Undisputed Facts at   ¶ 24 (not disputed); Rosenberg Dep. at 112-113; Notes of Guilty Plea and Sentencing at 37-38.[12]

---

[12] The following exchange is from Rosenberg's guilty plea on the resisting arrest charge:

> MR. ROSENBERG:  At this point, Your Honor, my original guilty plea it was understood by Judge Baratta just by me running from the car, that was sufficient enough for resisting arrest and that was part of the agreement, Your Honor.
> THE COURT:  So you are representing to the Court that you are guilty of resisting arrest because you fled from the scene?
> MR. ROSENBERG:  Yes, Your Honor.
> THE COURT:  And that in fleeing, are you admitting that the police were required to employ substantial force to overcome your resistance?
> MR. ROSENBERG:  No, not really, Your Honor.
> THE COURT:  I believe, Mr. Rosenberg, you're thinking in layman's terms as to what resisting arrest is. In other words, you resisted being placed under arrest. To plead guilty to the offense, you have to meet the legal definition of resisting arrest, that's the legal elements, before you can be found guilty. Obviously, if the police are required to use substantial force to overcome something you are doing in order to arrest you, that is resisting arrest.
> MR. ROSENBERG:  I admit that, sir.
> THE COURT:  You admit that you were struggling with them such that they had to overcome that?
> MR. ROSENBERG:  I admit that I tensed up on my all fours and they involuntarily cuffed me, yes, Your Honor.

Cont'd . . .

B.    Involvement of Sergeant Vangelo

Sergeant Vangelo arrived at the scene after Mr. Rosenberg was placed under arrest, and

he was present as Mr. Rosenberg was being brought to his feet after being handcuffed. Plf.'s

Resp. to Easton Defs.' Statement of Material Undisputed Facts at ¶ 26; Rosenberg Dep. at 134-

35; Vangelo Dep. at 154. From this point forward, Sergeant Vangelo was in charge of the scene

when Sergeant Weston was not present. Vangelo Dep. at 153.

At the Easton Police Station, Sergeant Vangelo was aware that Mr. Rosenberg was

handcuffed to the bar and was complaining of pain. Vangelo Dep. at 174-77, 181. He instructed

an officer at the Easton Police Station to photograph and document Mr. Rosenberg's injuries.

Plf.'s Resp. to Easton Defs.' Statement of Material Undisputed Facts at    ¶ 26; Rosenberg Dep.

at 134-35; Vangelo Dep. at 154, 169. He was also involved in advising Officer Homoki

regarding which charges to bring against Mr. Rosenberg. Plf.'s Resp. to Easton Defs.' Statement

of Material Undisputed Facts at ¶ 26.; Rosenberg Dep. at 157.

C.    Mr. Rosenberg's Law Enforcement Expert, Dr. John Peters

Mr. Rosenberg's law enforcement expert, Dr. John Peters, opined that Officer Homoki's

baton strikes "amounted to excessive force" and constituted an inappropriate use of the weapon.

Expert Report of Dr. John Peters ("Peters Rept.") at 10, 13. Dr. Peters also opined that, given

the injuries reportedly inflicted on Mr. Rosenberg, Officers Homoki and Miller should have

handcuffed Mr. Rosenberg in the front of his body, rather than behind his back, to minimize his

---

THE COURT: If I were a police officer on that scene based on your tensing up
and your actions, would I be justified in applying substantial force to overcome
your resistance?
MR. ROSENBERG:  Yes, Your Honor.

Guilty Plea and Sentencing at 36-38.

pain and potential for further injury. Id. at 14-15. Dr. Peters referenced the Policies of the International Association of Chiefs of Police, which states that a prisoner "*may be* handcuffed in front or restraint by other appropriate devices." Id. at 15-16 (emphasis added). He further stated that restraining Mr. Rosenberg to the wall-mounted bar while he was visibly injured, both before and after he was diagnosed with broken ribs, was improper and "amounted to excessive force and had no legitimate purpose other than to be punitive." Id. at 15-16. Dr. Peters also set forth opinions about the poor organizational atmosphere of the Easton Police Department, its deficient training policies, and its responsibility for the actions of its officers. See generally id.

It is well accepted that an expert cannot opine on ultimate legal issues or usurp the jury's function as to such issues, such as whether the use of force was "excessive." See Whitmill v. City of Philadelphia, 29 F. Supp. 2d 241, 246 (E.D. Pa. 1998) (expert properly precluded from expressing opinion on legality of detainee's stop and transportation); Burger v. Mays, 176 F.R.D. at 157 (E.D. Pa. 1997) (expert precluded from testifying that officer "unreasonably seized [arrestee]"). Expert testimony that "merely tell[s] the jury what result to reach" is improper. Id. at 156-57 (internal citation omitted). At oral argument in this case, Mr. Rosenberg's counsel agreed that Dr. Peters cannot testify regarding whether a particular level of force is "excessive," and clarified that Dr. Peters's testimony involves whether a particular level of force "falls outside the realm of national standards." Oral Argument Tr. at 38-39.

III.    DISCUSSION

A.    Excessive Force

A claim that a law enforcement officer used excessive force in the course of an arrest, investigatory stop, or other seizure is analyzed under the Fourth Amendment "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989); Hogan v. City of Easton, No. 04-759,

12

2004 U.S. Dist. LEXIS 16189, at **28-29 (E.D. Pa. Aug. 17, 2004).  In analyzing such a claim, a court must determine whether an officer's actions were reasonable "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . the question is whether the [officer's] actions are 'objectively reasonable' in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." Graham, 490 U.S. at 396-97 (internal citations omitted).  A reasonableness inquiry therefore "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (internal citations omitted).  See also Metzger by Metzger v. Osbek, 841 F.2d 518, 520 (3d Cir. 1988).  The Third Circuit Court of Appeals has listed other relevant factors, including the duration of the officer's action; whether the action takes place in the context of effecting an arrest; and whether the force applied was of such an extent as to lead to injury. Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

Whether the amount of force applied by an officer was reasonable is normally an issue for the jury.  Rivas v. City of Passaic 365 F.3d 181, 198 (3d Cir. 2004).  However, a court may grant summary judgment in a case such as this, if it concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.  Estate of Smith v. Marasco, 318 F.3d 497, 516 (3d Cir. 2003).

1.   Excessive Force Claim Against Officer Homoki Regarding His Use of the Police Baton

In their Motion for Summary Judgment, the Easton Defendants argue that Officer Homoki's repeated use of the baton on Mr. Rosenberg was reasonable under the circumstances.

13

They discuss cases outside this Circuit where considerable force was used to restrain an individual after that individual resisted or fled arrest, and such force was found to be constitutionally permissible as a matter of law.[13] Those cases are not applicable here.

In each of the cases cited by the Easton Defendants, the suspects resisted arrest or began to flee *before* the officers applied considerable force to restrain them. By contrast, here there is a dispute of fact regarding whether Officer Homoki's initial baton strike occurred *before* or *after*

---

[13] See Easton Defs.' Mot. For Summ. J. at 8-10 (discussing Winters v. Adams, 254 F.3d 758 (8th Cir. 2001), Flanigan v. Colchester, 171 F. Supp. 2d 361 (D. Vt. 2001), and John v. Berry, 469 F. Supp. 2d 922 (W.D. Wash. 2006)).

In Winters, officers attempted to speak with the intoxicated plaintiff who was sitting in a car and refusing to get out of the car. 254 F.3d at 760. The officers, concerned that the plaintiff may try to drive and hurt someone, broke a car window to gain entry. Id. at 761-72. When the officers entered the car, the plaintiff physically resisted being removed by kicking and punching at the officers. Id. In response, one officer punched the plaintiff in the eye, and the plaintiff stopped resisting and was restrained. Id. at 762. The court held that the blow to the plaintiff's eye was objectively reasonable under the circumstances. Id. at 765.

In Flanigan, police officers were attempting to take the plaintiff, who was intoxicated, into protective custody when the plaintiff became uncooperative and attempted to evade the officers. 171 F. Supp. 2d 362-63. As the plaintiff was moving away from the officers, one of the officers took him to the ground by knocking his feet out from under him and grabbing him around the chest. Id. The plaintiff landed on his right side, striking his shoulder, hip, and face. Id. at 363. The court held that the officer acted with reasonable force under the circumstances. Id. at 365. The court also found that "the cuts, scrapes, and muscle aches [plaintiff] allegedly suffered are not so severe as to suggest the use of excessive force," noting that "[w]hile the fractured right orbit bone is more serious, it is not a surprising result of a reasonable police response to [the plaintiff's] conduct." Id. at 366.

In Berry, an officer attempted to detail and arrest the fleeing plaintiff, who ran from his car after being stopped for an expired license plate. 469 F. Supp. 2d at 926-28. In the foot chase that ensued, the officer identified himself as a police officer and requested that the plaintiff surrender, which request the plaintiff refused. Id. at 928. Even when the officer caught the plaintiff, he continued to resist by flailing and striking the officer in the head. Id. at 928-29. In an attempt to control the plaintiff, the officer struck him in the head with his metal flashlight. Id. The court held that the force used by the officer was "certainly reasonable," and entered summary judgment in favor of the defendant officer, finding that the officer "struck plaintiff on the head, because it was the only area of plaintiff's body reasonably available to him under the circumstances, and did so only because he legitimately feared he was about to be hit again by plaintiff's elbow, thereby opening the possibility of further endangering the safety of himself, as well as that of others who were, or about to be, present at the scene." Id. at 937.

14

Mr. Rosenberg resisted arrest. According to Mr. Rosenberg's evidence, Officer Homoki struck Mr. Rosenberg without any provocation after Mr. Rosenberg complied with the police order to place his hands on the car he was driving. See Oral Argument Tr. at 26. A jury could find this blow to be objectively unreasonable under the circumstances. See Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (finding excessive force as a matter of law where officers tackled an individual who was neither resisting nor fleeing); Hung v. Watford, No. 01-3580, 2002 U.S. Dist. LEXIS 23064, at **18-19 (D.N.J. Dec. 3, 2002) (denying summary judgment where plaintiff presented evidence that she was complying with the officer's instructions when the officer grabbed her by her neck from behind, punched her in the stomach and threw her to the ground). See also Frazell v. Flanigan, 102 F.3d 877, 884 (7th Cir. 1996) (affirming jury finding of excessive force where there was evidence that plaintiff had ceased resisting and noting that "[a] reasonable jury could have inferred from this evidence that [plaintiff] had effectively been subdued, that he could not escape, and that he posed no danger to the officers when [the officer] drew back his club or nightstick and struck [plaintiff] with it twice in the back"), overruled on other grounds by McNair v. Coffey, 279 F.3d 463 (7th Cir. 2002); Marley v. Crawford County, 383 F. Supp. 2d 1129, 1133 (W.D. Ark. 2005) ("There is no doubt that striking a detainee in the head with a baton or flashlight when he is not resisting constitutes excessive force").

There is also a dispute of fact regarding the extent to which Mr. Rosenberg was resisting arrest after the foot chase had ended, when Officer Homoki caught up to him and repeatedly struck him with the baton. Crediting Mr. Rosenberg's story, a jury could find that when Mr. Rosenberg was on his hands and knees, tensed but not flailing or punching, Officer Homoki unreasonably continued to strike him with the baton. See Oral Argument Tr. at 26-28; Sallenger v. Oakes, 473 F.3d 731, 740 (7th Cir. 2007) ("Although closed-fist blows and blows with the

flashlight [to plaintiff's back] may have been necessary at first, this does not mean that this force was still justified after the handcuffs had been secured."); Peschko v. City of Camden, No. 02-5771, 2006 U.S. Dist. LEXIS 43871, at **17-18 (D.N.J. June 28, 2006) (acknowledging that "a reasonable jury could find that the defendant officers used excessive force in effecting [plaintiff's] arrest, especially considering his claim that he did not resist arrest once on the ground"); Champion v. Outlook Nashville, Inc., 380 F.3d 893, 902 (6th Cir. 2004) ("We have also consistently held that various types of force applied after the subduing of a suspect are unreasonable and a violation of a clearly established right.").

The Easton Defendants make much of Mr. Rosenberg's admissions at his guilty plea hearing that 1) he was resisting arrest and 2) that a police offer on the scene was justified in applying "substantial force" to overcome the resistance.  They argue that Mr. Rosenberg is judicially estopped from disavowing his guilty plea and "asserting inconsistent claims in different legal proceedings."  Koltomik v. Borough of Laureldale, 443 F. Supp. 2d 685, 696 (E.D. Pa. 2004) (quoting Mintze v. Am. Fin. Servs., Inc., 434 F.3d 222, 232 (3d Cir. 2006).  See also Perlleshi v. County of Westchester, No. 98-6927, 2000 U.S. Dist. LEXIS 6054 (S.D.N.Y. Apr. 24, 2000).  A closer examination of the caselaw, however, reveals that Mr. Rosenberg's guilty plea admissions are not necessarily at odds with his excessive force claims.

In Perlleshi, the plaintiff brought a civil case for claims of excessive force.  The plaintiff claimed that, during his arrest for driving while intoxicated, he was punched, hit, and knocked out by an arresting officer.  Id. at *3.  As part of the plaintiff's prior plea agreement in the underlying criminal matter, he pled guilty to three misdemeanor charges, including resisting arrest.  Id. at *6.  During his plea allocution, the plaintiff admitted that he "continuously struggled with [the officers] by flailing [his] arms and refusing to place [his] hands on a patrol

16

car as instructed by [one of the officers] and, after [he was] advised that [he was] being placed under arrest for Driving While Intoxicated, [he] began struggling violently with [the officers] and punched [one of them] in the face." Id. at *7. The court stated that it needed to determine whether the force used by the officer was reasonable under the circumstances. Id. at *14. However, because the plaintiff had failed to present any evidence other than his own deposition testimony that the amount of force used was excessive, the court determined that it did not need to apply the "objective reasonableness test" and could resolve the issue in the defendants' favor by applying the principles of judicial estoppel. Id. The court held that the plaintiff could not assert that he was a passive victim of police violence because he had previously stated, under oath, that he resisted arrest to the point of punching and causing physical injury to a police officer. Id. at **14-17.

However, the Perlleshi court noted that the fact that the plaintiff admitted to resisting arrest was not "automatically dispositive" of his claim that the officer's conduct constituted excessive force. Id. at *14. As recognized by the Third Circuit Court of Appeals, a suspect's conviction of resisting arrest does not always immunize an arresting officer from liability for the use of excessive force, and vice versa. See Lora-Pena v. Federal Bureau of Investigation, 529 F.3d 503, 506 (3d Cir. 2008) ("Lora-Pena's convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions."); Nelson v. Jashurek, 109 F.3d 142, 145 (3d Cir. 1997) (finding that although plaintiff's conviction for resisting arrest signified that the officers were justified in using "substantial force" against him, it did not bar plaintiff from bringing a claim for excessive force against the arresting officer; "there undoubtedly could be 'substantial force' which is objectively reasonable and 'substantial force'

17

which is excessive and unreasonable"). See also Ford v. Sanders, No. 07-0778, 2008 U.S. Dist. LEXIS 11424, at **12-13 (E.D. Pa. Feb. 15, 2008) (denying summary judgment of § 1983 excessive force claim and finding that plaintiff's underlying conviction for simple assault of the arresting officers did not bar his excessive force claim, noting that "[t]o hold otherwise would imply, an officer could constitutionally use excessive force against any person who committed an offense, no matter how inconsequential.").

Here, the admissions that Mr. Rosenberg made at his guilty plea hearing do not necessarily contradict the facts he is asserting here. Mr. Rosenberg's admission that Officer Homoki may have been justified in using "substantial" force to subdue him does not necessarily mean that Officer Homoki was justified in striking him repeatedly with a baton. There is also a critical factual dispute here involving the *timing* of Mr. Rosenberg's "resistance" in relation to the timing of Officer Homoki's alleged baton strikes. Based on the record evidence, a jury could properly find that Officer Homoki had used "unreasonable" force by striking Mr. Rosenberg with his baton after Mr. Rosenberg already had been subdued and after he no longer posed any threat or flight risk. For these reasons, summary judgment on the excessive force claims against Officer Homoki must be denied.

> 2.    Excessive Force Claims Against Sergeant Weston, Sargeant Vangelo, Officer Miller, and Officer and Homoki Regarding Improper Handcuffing

Mr. Rosenberg brings claims of excessive force against Sergeant Weston, Sargeant Vangelo, Officer Miller, and Officer Homoki, arguing that they are subject to liability for their role in handcuffing Mr. Rosenberg behind his back after his arrest, and handcuffing him to a bar at the police station. Plf.'s Consolidated Opp. Brief at 17, 20; Oral Argument Tr. at 29-30. Easton Defs.' Statement of Material Undisputed Facts at ¶ 27 (not disputed); Deposition of

Officer Christopher Miller ("Miller Dep.") at 24-29.[14]  The handcuffing allegations against

Officer Homoki and Officer Miller are based on their active, direct roles in handcuffing Mr.

Rosenberg.  The handcuffing allegations against Officer Miller, Sargeant Weston, and Sargeant

Vangelo are based on a theory of bystander liability, and the handcuffing allegations against

Sargeant Weston an Sargeant Vangelo are based on a theory of supervisory liability.  For the

reasons that follow, the record evidence regarding the manner in which Mr. Rosenberg was

handcuffed, viewed in the light most favorable to Mr. Rosenberg, cannot support excessive force

claims.

Handcuffing an arrestee may satisfy legitimate police and safety concerns.  See Jackson

v. Cain, 864 F.2d 1235, 1243-44 (5th Cir. 1989) ("the use of handcuffs or other restraining

devices constituted a rational security measure and cannot be considered cruel and unusual

punishment unless great discomfort is occasioned deliberately as punishment or mindlessly, with

indifference to the prisoner's humanity.").  If handcuffing is undertaken improperly, however, it

may serve as the basis for an excessive force claim.  This issue is addressed by two recent

decisions from the Third Circuit Court of Appeals.

In Kopec v. Tate, 361 F.3d 772, 773-74 (3d Cir. 2004), discussed at length in the parties'

briefs and at oral argument in this case, the Third Circuit Court of Appeals reversed a grant of

summary judgment in an excessive force case involving too-tight handcuffs.  In Kopec, the

plaintiff asserted that after his arrest, he was groaning in front of a police officer because he was

in intense pain due to his tight handcuffs.  Id. at 774.  He also complained to the officer of the

pain caused by the handcuffs, requested that the officer loosen the handcuffs, and even fainted

---

[14]  Mr. Rosenberg does not argue that Sergeant Weston, Sargeant Vangelo and Officer Miller are
subject to liability for anything that occurred prior to the handcuffing.

because of the pain to his wrist. Id. Additionally, he produced evidence that the tight handcuffs caused nerve damage in his wrist, which required treatment by a surgeon for more than a year. Id. In rejecting the grant of summary judgment for the defendant, the Court of Appeals cautioned that the "opinion should not be overread as we do not intend to open the floodgates to a torrent of handcuff claims." Id. at 777. See Oral Argument Tr. at 36-38, 48.

The Court reached a different conclusion in Gilles v. Davis, 427 F.3d 197 (3d Cir. 2005). In Gilles, the court held that a plaintiff's excessive force claims could *not* survive summary judgment where the plaintiff complained of pain from his handcuffs, but exhibited no signs of discomfort while he was handcuffed and never sought independent medical care for injuries allegedly caused by the handcuffs. Id. at 207-08. The court found that alleged discomfort, without more, is not enough to establish a claim. Id. at 208. See also Solan v. Ranck, No. 06-0049, 2007 U.S. Dist. LEXIS 3701, *22 (M.D. Pa. Jan. 18, 2007) (citing Kopec, granting summary judgment on excessive force claim related to tight handcuffs, where Plaintiff admitted he was not injured as a result of the handcuffing.); Donahue v. Beers, No. 02-224J, 2006 U.S. Dist. LEXIS 69181, *2 (W.D Pa. Sept. 26, 2006) (granting summary judgment for defendant officers where "[p]laintiff has no medical history of treatment (or seeking treatment) for this alleged injury [from improper handcuffing]. As to the plaintiff's alleged permanent injury to his hand, plaintiff has produced no sufficient evidence to create an issue of material fact that the defendant troopers used excessive force."); Minor v. City of Chesterfield, 2007 US. Dist. LEXIS 39990, **17-18 (E.D. Mo. June 1, 2007) (finding that a police officer was entitled to summary judgment on plaintiff's claims of handcuffing that exacerbated a preexisting injury, because there was no "objective indicia of injury" to alert the officer that handcuffing plaintiff behind his back could aggravate a preexisting injury).

Mr. Rosenberg cites a multitude of other cases where courts have allowed plaintiffs to proceed on excessive force claims based on improper handcuffing. In each of these other cases, however, the plaintiffs had complained that the handcuffs themselves were causing physical pain, or informed the officers that they had a preexisting injury that was being exacerbated by the handcuffs, or suffered a physical injury as a result of the handcuffing procedures. See, e.g., Tate v. West Norriton Township, 545 F. Supp. 2d 480, 483, 490 (E.D. Pa. 2008) (denying summary judgment as to defendant officer where Plaintiff was handcuffed for approximately four minutes, despite telling the officer three times the handcuffs were too tight, resulting in a swollen and discolored wrist that required two months of treatment); Occhiato v. Exeter Township, No. 04-0499, 2005 U.S. Dist. LEXIS 31020, **2-3, 12 (M.D. Pa. Nov. 17, 2005) (denying summary judgment as to defendant officer where plaintiff requested that handcuffs be loosened, but the officer refused; upon removal of the handcuffs, plaintiff's wrists were bleeding and had abrasions, and plaintiff required medical treatment for numbness in his thumb and finger); Rosado v. Williams, No. 04-369, 2006 U.S. Dist. LEXIS 24840, **3-4, 12-13 (D. Conn. Apr. 26, 2006) (denying summary judgment as to defendant officer where the officer was informed that plaintiff had a preexisting shoulder injury that was being aggravated by being handcuffed behind her back, yet refused to remove the handcuffs, and also placed plaintiff in a holding cell). See also Davis v. Callaway, No. 05-000127, 2007 U.S. Dist. LEXIS 29468, **4, 21-22 (D. Conn. Apr. 9, 2007) (holding that a plaintiff can make out a claim of excessive force based on handcuffing when he makes an officer aware of a preexisting injury, but noting that no such awareness was present and the officers' use of force was not excessive).

By contrast, Mr. Rosenberg never told the defendant officers here that his handcuffs were too tight, or were themselves causing him physical injury or pain. He asserts that he made

general complaints of pain to the officers, but there is no evidence that he complained about any *specific* pain involving the handcuffs.  Even now, Mr. Rosenberg does not present any evidence to suggest that the handcuffs *themselves* injured him or that he was injured because of the manner in which he was placed in handcuffs.

Nothing in Mr. Rosenberg's hospital discharge instructions indicated that he should not be handcuffed behind his back or handcuffed to a bar.  Moreover, Mr. Rosenberg admits that he had already resisted arrest by the time he arrived at the police station, making it reasonable (and perhaps even necessary) for the officers to restrain him by handcuffing him to a bar.  Mr. Rosenberg points to Dr. Peters' opinion that he should have been restrained or secured differently at the police station, Plf.'s Consolidated Opp. Brief at 16-17, but does not allege that the officers violated any constitutional requirement or standard.  On balance, the Court concludes that as a matter of law the defendant officers did not use excessive force in handcuffing Mr. Rosenberg behind his back after his arrest, or handcuffing him to a bar at the police station.  Accordingly, summary judgment will be granted in favor of Sergeant Weston, and Sargeant Vangelo and Officer Miller on Mr. Rosenberg's excessive force claims emanating from the handcuffing allegations.

B.      Qualified Immunity of Officer Homoki

The privilege of qualified immunity shields governmental officials from civil liability for performing discretionary acts as long as their conduct "does not violate a clearly established statutory or constitutional right of which a reasonable person would have known."  McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005) (internal quotations omitted).  The question of whether an official is protected by qualified immunity depends on whether, under the proper standard, the plaintiff has alleged a violation of a constitutional right; whether the right was clearly established

22

at the time of the acts; and whether a reasonable person in the official's position would have known that his conduct would violate that right. Rosenberg v. Vangelo, No. 01-2514, 2002 U.S. Dist. LEXIS 6654, 6, n.1  (E.D. Pa. Apr. 18, 2002).  See also Karnes v. Skrutski, 62 F.3d 485, 491-92 (3d Cir. 1995) (finding that a police officer is entitled to qualified immunity if a reasonable officer could have believed that his conduct was lawful in light of clearly established law and the information the officer possessed).  The qualified immunity analysis is flexible, and judges considering qualified immunity claims need not start by resolving whether a constitutional violation occurred, but may begin the inquiry by addressing whether the alleged constitutional right was clearly established at the time.  Pearson v. Callahan, 129 S.Ct. 808, 813, 817 (2009).

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "A court presented with a claim of qualified immunity must examine both the law that was clearly established at the time of the alleged violation and the facts available to the officer at that time, and must then determine, in light of both, whether a reasonable official could have believed his conduct was unlawful."  Paff v. Kaltenbach, 204 F.3d 425, 431 (3d Cir. 2000).  See also Brosseau, 543 U.S. at 199; Blackhawk v. Pennsylvania, 381 F.3d 202, 215 (3d Cir. 2004).  Qualified immunity gives police officers "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal quotations omitted).  The officer's subjective intent is irrelevant.  Showers v. Sangler, 182 F.3d 165, 171-72 (3d Cir. 2000).

In a recent excessive force case highlighted by the Defendants at oral argument, Archer

23

v. Melchionda, No. 06-2306, 2008 U.S. Dist. LEXIS 4649 (D.N.J. Jan. 22, 2008), the court held that an officer was entitled to qualified immunity because the officer's use of a baton strike to overcome a suspect's resistance was "objectively reasonable under the circumstances and no reasonable jury could find otherwise." Id. at **19-20; Oral Argument Tr. at 10-12. In that case, the plaintiff-shoplifter led police on a foot chase after ignoring commands to stop. Id. at **5-6. Once caught, the plaintiff continued to resist arrest by swinging his arms and pushing an officer. Id. at **6-7. The officer struck the plaintiff on the forearm with his baton – "an area of his body not designed to produce serious injury" - and then handcuffed him. Id. at *23. Based upon its facts, Archer is inapplicable here, because when viewing the evidence in the light most favorable to Mr. Rosenberg, Officer Homoki's baton strikes were not and could not have been reasonable under the circumstances.

Here, Officer Homoki contends that he is entitled to qualified immunity because Mr. Rosenberg did not suffer a violation of his constitutional rights and because his actions were objectively reasonable under the circumstances. However, at the time of Mr. Rosenberg's arrest, the law was clearly established that police officers may not use unreasonable force in an arrest; specifically, they may not repeatedly strike an arrestee with a baton when the arrestee is not resisting arrest or otherwise being uncooperative. Viewing the evidence in the light most favorable to Mr. Rosenberg, a reasonable jury could return a finding that Officer Homoki struck Mr. Rosenberg with his baton without provocation, after he had complied with the officer's orders, and also struck Mr. Rosenberg after he had ceased resisting arrest and was on his hands and knees. Such a finding would be consistent with the conclusion that Officer Homoki violated Mr. Rosenberg's constitutional right to be free from excessive force, a right that was clearly established at the time of his arrest. Accordingly, Officer Homoki is not entitled to qualified

immunity at this stage of the litigation.[15]

The rights of citizens to be free from the use of unreasonable force were clearly established at the time of the incident. If Mr. Rosenberg's version of the facts is accepted, no reasonable officer in Officer Homoki's position could have believed that, where a driver of a car had complied with police instructions to return to the back of his car and place both his hands on the car, it is lawful to strike the driver with a baton without any provocation. Crediting Mr. Rosenberg's story, there is no evidence that Mr. Rosenberg engaged in conduct that would render Officer Homoki's initial baton strike reasonable, notwithstanding Officer Homoki's subjective perception of the situation. There are sufficient facts in the record for a jury to find that Officer Homoki's initial baton strike was unreasonable under the circumstances, and that a reasonable officer in Officer Homoki's position should have known this.

C.    Conspiracy Claims Against Defendant Officers

Mr. Rosenberg also alleges that the defendant officers, separately and acting in concert, conspired to conceal or cover up their use of excessive force, in violation of 42 U.S.C. §§ 1983 and 1985. At the outset, Mr. Rosenberg's claims under § 1985(3) must fail because he did not allege or provide any evidence regarding class-based animus, a threshold component of a

---

[15] In general, "qualified immunity is an objective question to be decided by the court as a matter of law." Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004) (internal citations omitted). Ideally, the issue of whether an official is entitled to qualified immunity should be determined prior to trial, as a purpose of qualified immunity is to protect officials and public employees from the process of litigation. Mitchell v. Forsythe, 472 U.S. 511, 525-26 (1985); Carswell, 381 F.3d at 241. However, the Third Circuit Court of Appeals has held that it is the province of the jury to determine "disputed historical facts material to the qualified immunity question." Id. at 242. See also Curley v. Kelm, 298 F.3d 271, 277-78 (3d Cir. 2002) ("Curly I"). For example, a judge could use jury interrogatories to allow the jury to resolve the disputed facts on which the qualified immunity defense depends, and then the court could determine, as a matter of law, the ultimate question of qualified immunity. Id. at 279.

§ 1985(3) claim.[16]

To support a conspiracy claim under 42 U.S.C. §1983, Mr. Rosenberg must set forth

particularized allegations that show "a combination of two or more persons to do a criminal act,

or to do a lawful act by unlawful means, for an unlawful purpose." Hammond v. Creative

Financial Planning, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992) (citing Ammlung v. City of

Chester, 494 F.2d 811, 814 (3d Cir. 1974).  He must make "specific factual allegations of

combination, agreement, or understanding among all or between any of the defendants to plot,

plan, or conspire to carry out the alleged chain of events." Id. at 1249.

Mr. Rosenberg does not include any arguments regarding an alleged conspiracy in his

Consolidated Opposition Brief.[17]  However, at oral argument, Mr. Rosenberg's counsel listed a

series of alleged facts in support of Mr. Rosenberg's claim of conspiracy:  the settlement of the

prior lawsuit between Mr. Rosenberg and Easton police officers, which settlement occurred five

months prior to Mr. Rosenberg's arrest; Sargeant Vangelo's admission that he was upset about

---

[16] To state a claim under 42 U.S.C. § 1985(3), a plaintiff must plead and ultimately prove: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or is deprived of a right or privilege of a citizen of the United States.  United Brotherhood of Carpenters v. Scott, 463 U.S. 825, 828-29 (1983) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)).  A claim under 42 U.S.C. § 1985(3) requires "some racial, or perhaps otherwise class-based invidiously discriminatory animus . . . behind the conspirators' action." Bray v. Alexandria Williams Health Clinic, 506 U.S. 263, 268-69 (1993) (citing Griffin v. Breckenridge, 403 U.S. 88, 102)).

[17] Mr. Rosenberg alleged in his Second Amended Complaint that portions of the videotape, which recorded his holding at the police station, were of poor quality as a result of unspecified intentional acts of the Defendants to destroy or conceal evidence.  Second Am. Compl. at ¶¶ 37-38.  At oral argument in this case, Mr. Rosenberg's counsel confirmed that Mr. Rosenberg was no longer pursuing a conspiracy claim that Defendants tampered with the videotape in an attempt to destroy or conceal evidence. Oral Argument Tr. at 30-31.

the settlement of the prior lawsuit; Officer Homoki's testimony that Sargeant Vangelo discussed the prior lawsuit and settlement with him; Officer Homoki's radio call to other officers at the beginning of the incident, stating "I've got Rosenberg"; Sargeant Vangelo's arrival at the scene moments after Officer Homoki reported that he had "got" Rosenberg; the delay between Mr. Rosenberg's arrest, his arrival at the hospital, and treatment for his injuries; Mr. Rosenberg's chaining to the bar at the police station, which "exacerbate[d]" his injury and "stretche[d] out his ribcage;" and a police video showing that Mr. Rosenberg was shirtless and kept in a cold police station on the night of his arrest. Oral Argument Tr. at 32. They also point to Sargeant Vangelo's testimony that because of the settlement, he took an interest in Mr. Rosenberg that led him to review the booking room tape after the incident was over. Vangelo Dep. at 139-41, 202-06. Additionally, Mr. Rosenberg agreed with the Sergeant Weston's assertion that "the basis of Plaintiff's conspiracy claim against Defendant Weston is his subjective belief, unsupported by any testimony, that officers may have been talking about him while the officers were outside of the holding area, though Plaintiff does not know anything that was said by the officers." Defendant Weston's Statement of Material Undisputed Facts at ¶ 4 (not disputed).

Viewed in the light most favorable to Mr. Rosenberg, these facts simply do not constitute the kind of "specific allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire" to violate Mr. Rosenberg's rights. Accordingly, the Court must grant summary judgment to all defendant officers on the conspiracy claims.

D.    Derivative Monell Claim Against the City of Easton

In order to establish liability under Section 1983 against a local government unit, a plaintiff must demonstrate: (1) the deprivation of a Constitutional right; (2) that an action was

27

taken pursuant to a custom or policy of the local government unit; and (3) that such action was the cause of the deprivation of the Constitutional right. Brown v. Commonwealth of Pennsylvania Dep't of Health Emergency Svcs., 318 F.3d 473, 482 (3d Cir. 2003) (citing Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 691 (1978)). If there is no constitutional violation, then there can be no derivative municipal or supervisory claim. See Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite besides the point." (emphasis in original)); Estate of Smith v. Marasco, 318 F.3d 497, 505 (3d Cir. 2003) ("[T]he initial question in a section 1983 action is whether the plaintiff has alleged a deprivation of a constitutional right at all.") (internal quotations omitted). The only argument made in the Easton Defendants' Motion for Summary Judgment on behalf of the City of Easton is that Mr. Rosenberg failed to establish a Constitutional violation. Easton Defs.' Mot. For Summ. J. at 3, 20.

As discussed above, a jury could find that a constitutional violation occurred when Officer Homoki struck Mr. Rosenberg with a baton without any provocation, and continued to strike him even after he was subdued on all fours and was not flailing or punching. Accordingly, summary judgment must be denied with respect to the Monell claim against the City of Easton.

E.     Assault and Battery Claims Against All Officers

A police officer is justified when making an arrest in committing what would otherwise be an assault and battery, provided the force used is reasonable. Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). The Pennsylvania Supreme Court has explained,

> A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances

28

to effectuate the arrest.  The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.

Id. at 293.  An officer may be liable for assault and battery if he uses excessive or unnecessary force during the arrest.  Id. at 293.  "In exercising authority or performing his or her duty, a police officer's use of force will not be considered assault and battery unless a jury determines that the force used was unreasonable."  Tillman v, Alonso, No. 04-4391, 2005 U.S. Dist. LEXIS 34607, *30 (E.D. Pa. Dec. 21, 2005) (citing Renk, 641 A.2d at 293).

As discussed above, a jury could find that Officer Homoki unreasonably struck Mr. Rosenberg with a baton without any provocation, and continued to strike him even after he was subdued on all fours and was not flailing or punching.  Such a finding could be support Mr. Rosenberg's assault and battery claims against Officer Homoki; accordingly, summary judgment must be denied with respect to the assault and battery claims against Officer Homoki, and Officer Homoki can not receive qualified immunity on those claims.

By contrast, summary judgment must be granted for Sergeants Weston and Vangelo and Officer Miller on Mr. Rosenberg's assault and battery claims for much the same reasons that these officers must receive summary judgment on Mr. Rosenberg's excessive force claims – namely, Mr. Rosewnberg's handcuffing was reasonable under the circumstances and does not form the basis for an actionable claim.

F.     Mr. Rosenberg's Claims of Intentional Infliction of Emotional Distress

Mr. Rosenberg brings a claim for intentional infliction of emotional distress ("IIED"), alleging that as a result of this incident, he suffers from, inter alia, emotional and psychological distress and trauma.  To establish an IIED claim under Pennsylvania law, a plaintiff must demonstrate that the defendant's conduct was: "(1) extreme and outrageous; (2) intentional or

reckless; and (3) caused severe emotional distress." <u>Hargraves v. City of Philadelphia</u>, No. 05-4758, 2007 U.S. Dist. LEXIS 31951, at *9 (E.D. Pa. April 26, 2007) (citing <u>Dingle v. Centimark Corp.</u>, No. 00-6418, 2002 U.S. Dist. LEXIS 9988, at *8 (E.D. Pa. June 3, 2002)) (dismissing plaintiff's intentional infliction of emotional distress claim based on racial discrimination and retaliation).  To prevail on such a claim, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Cox v. Keystone Carbon Co.</u>, 861 F.2d 390, 395 (3d Cir. 1988) (quoting <u>Buczek v. First Nat'l Bank of Mifflintown</u>, 366 Pa. Super. 551, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).  Pennsylvania law also requires that a plaintiff suffer "some type of resulting physical harm due to the defendant's outrageous conduct" in order to satisfy the severe emotional distress element of this claim.  <u>Reeves v. Middletown Athletic Ass'n</u>, 2004 PA Super 475, 866 A.2d 1115, 1122-23 (Pa. Super. Ct. 2004) (affirming dismissal of intentional infliction of emotional distress claim because plaintiff's complaint only alleged "serious and permanent physical injury" without specifying the type of injury) (internal citations omitted); <u>see also</u> <u>Fulton v. United States</u>, 198 Fed. App'x 210, 215 (3d Cir. 2006) (non-precedential) ("In Pennsylvania, both intentional and negligent infliction of emotional distress requires a manifestation of physical impairment resulting from the distress."); <u>see also</u> <u>Tupper v. Haymond & Lundy</u>, No. 00-3550, 2001 U.S. Dist. LEXIS 12399 at *19 (E.D. Pa. Aug. 16, 2001) ("A plaintiff must either show that she obtained medical treatment for the distress, or provide expert medical testimony of the existence and severity of the alleged emotional distress").

In Mr. Rosenberg's Opposition Brief, he argues that "[t]he records amply demonstrate that Rosenberg suffered from emotional and psychiatric distress as a result of his treatment by Defendants, which caused his skin condition to worsen and possibly induced panic attacks and

that Mr. Rosenberg sought medical attention for these conditions." Plf.'s Consolidated Opp. Brief at 24. However, the records to which Mr. Rosenberg refers do not support his assertions. The records are somewhat illegible, but appear to reflect that Mr. Rosenberg had a "personal problem" (KAR 0412) and some unspecified "infectious disease." They do not reflect that Mr. Rosenberg actually sought or received care for conditions that were caused or worsened by the defendant officers' actions as opposed to the effects of Mr. Rosenberg's own incarceration. Even viewed in the light most favorable to Mr. Rosenberg, the evidence cannot "possibly" support a claim of intentional infliction of emotional distress, and therefore summary judgment must be granted in favor of all Defendants on Mr. Rosenberg's claims of intentional infliction of emotional distress.

G.     Mr. Rosenberg's Claim for Punitive Damages

In Mr. Rosenberg's "Prayer for Relief," he requests, among other relief, punitive damages against all Defendants. However, municipalities are immune from punitive damages. 42 U.S.C. § 1983; Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981). Likewise, because official capacity suits are, in effect, suits against the governmental agency, punitive damages are not available against an officer in his or her official capacity. Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988). At oral argument, Mr. Rosenberg's counsel conceded that Mr. Rosenberg cannot pursue punitive damages against the City of Easton, and confirmed that Mr. Rosenberg's punitive damages claims are limited to the Defendant Officers in their individual capacities. See Oral Argument Tr. at 32-33.

A court may award punitive damages only for "conduct that is outrageous, because of the defendant's evil motives or his reckless indifference to the rights of others." Rizzo v. Heines, 555 A.2d 58, 69 (1989). More specifically, a court may only award punitive damages only "if

31

the conduct was malicious, wanton, reckless, willful or oppressive." Id. (internal citation omitted). See also Startzell v. City of Philadelphia, No. 05-5287, 2007 U.S. Dist. LEXIS 4082, *75 (E.D. Pa. Jan. 18, 2007) ("A court cannot impose a punitive damages award against an official acting in his or her individual capacity unless the actor's conduct is, at a minimum, reckless or callous.") (citing Brennan v. Norton, 350 F.3d 399, 428-29 (3d Cir. 2003)).

For the reasons discussed above, Mr. Rosenberg cannot recover against any of the Defendants for his improper handcuffing claims, and therefore there is no basis for punitive damages against Sergeants Weston and Vangelo and Officer Miller. However, Mr. Rosenberg has presented sufficient evidence to support a recovery of punitive damages against Officer Homoki, namely 1) evidence that, after Mr. Rosenberg had complied with Officer Homoki's order to place his hands on the car, Officer Homoki struck Mr. Rosenberg with a baton, and 2) evidence that, just prior to Mr. Rosenberg's arrest, Officer Homoki repeatedly struck Mr. Rosenberg with a baton when Mr. Rosenberg was "tensed up" on his hands and knees. If the jury credits Mr. Rosenberg's version of events, it may conclude that Officer Homoki was "wantonly" or "recklessly" indifferent to Mr. Rosenberg's civil rights, sufficient to support a recovery of punitive damages against Officer Homoki. Accordingly, the Court denies summary judgment as to Mr. Rosenberg's claim for punitive damages against Officer Homoki.

IV.    CONCLUSION

For the reasons discussed above, the Court denies summary judgment as to Mr. Rosenberg's claims of excessive force under 42 U.S.C. § 1983, assault, and battery against Officer Homoki, including the claim for punitive damages, and finds that Officer Homoki is not entitled to qualified immunity. The Court also denies summary judgment as to Mr. Rosenberg's Monell claim against the City of Easton under 42 U.S.C. § 1983. The Court grants summary

32

judgment as to Mr. Rosenberg's claims of conspiracy under 42 U.S.C. §§ 1983 and 1985, and his claims of intentional infliction of emotional distress, against all defendant officers.  The Court also grants summary judgment as to Mr. Rosenberg's claims of excessive force under 42 U.S.C. §§ 1983 and 1985, assault, and battery against Sergeants Weston and Vangelo and Officer Miller.  An Order consistent with this Memorandum follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH A. ROSENBERG, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
|   vs. | : | |
| | : | |
| STEPHEN HOMOKI, et al., | : | |
|     Defendant. | : | NO. 06-3719 |

## ORDER

AND NOW, this 9th day of April, 2009, upon consideration of the Motion for Summary Judgment filed by Defendants Officer Homoki, Officer Miller, Sergeant Vangelo, and the City of Easton (Docket No. 38) and the Motion for Summary Judgment filed by Sargeant Michael Weston (Docket No. 40), it is hereby ORDERED that the  Motion for Summary Judgment filed by Defendants Officer Homoki, Officer Miller, Sergeant Vangelo, and the City of Easton (Docket No. 38) is GRANTED IN PART and DENIED IN PART, as set forth in the accompanying memorandum.  It is FURTHER ORDERED that the Motion for Summary Judgment filed by Sargeant Michael Weston (Docket No. 40) is GRANTED.

BY THE COURT:

GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE